UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSE MARTIN TAVARES-TEJADA,

    Petitioner,

v.                                        22-CV-918 (JLS)

ALEJANDRO MAYORKAS, in his
official capacity as Secretary, U.S.
Department of Homeland Security,
THOMAS BROPHY, in his official
capacity as Acting Field Office Director,
Buffalo Field Office, Enforcement and
Removal Operations, U.S. Immigration
and Customs Enforcement, U.S.
Department of Homeland Security,
JEFFREY SEARLS, in his official
capacity as Officer-in-Charge, Buffalo
Federal Detention Facility, U.S,
Immigration and Customs
Enforcement, U.S. Department of
Homeland Security,

    Respondents.

---

## DECISION AND ORDER

Petitioner-Plaintiff Jose Martin Tavares-Tejada, a native of the Dominican Republic and noncitizen of the United States, commenced this proceeding on November 28, 2022. Dkt. 1. He also moved for a temporary restraining order. Dkt. 3. Tavares-Tejada seeks an order from this Court that Respondents-Defendants "cease any ongoing actions and refrain from taking any additional actions toward effectuating [his] removal from the United States" until the Court resolves his petition. Dkt. 3-1, at 2.

For the following reasons, the Court does not have jurisdiction to decide Tavares-Tejada's motion for a temporary restraining order and, therefore, denies the motion.

## BACKGROUND

### I. Factual Background

As alleged in the petition, Tavares-Tejada is a sixty-nine-year-old native of the Dominican Republic. Dkt. 1 ¶ 1. When he filed the petition,[1] he was detained at the Buffalo Federal Detention Facility. *Id.* ¶¶ 1, 2. In August 2022, Tavares-Tejada experienced acute chest pain and received emergency heart surgery. *Id.* ¶¶ 2, 11. As he recovered in the intensive care unit, he developed additional symptoms and again underwent surgery. *Id.* ¶ 11. Tavares-Tejada was discharged from the hospital on August 23, 2022—approximately eight days after his first surgery—and was transferred to the medical unit at Coxsackie Correctional Facility, despite recommendations for placement at a rehabilitation facility. *Id.* ¶¶ 2, 13.

While at Coxsackie, Tavares-Tejada did not receive rehabilitation services or a low-sodium diet, and his condition deteriorated as he continued to experience symptoms. *Id.* ¶ 14. He was transferred to the Clinton County Correctional Facility on September 20, 2022, instead of being transported to a follow-up

---

[1] He currently is detained at a staging facility in Louisiana. *See* Dkt. 16. Counsel for Respondents-Defendants informed the Court that Tavares-Tejada is scheduled to be removed from the United States the morning of December 6, 2022.

appointment with the cardiovascular surgery department. *Id.* He later was transferred to the Buffalo Federal Detention Facility. *Id.*

Tavares-Tejada's symptoms—including dizziness, weakness, and upper abdominal pain and pressure—worsened on October 11, 2022, and he returned to the hospital. *Id.* ¶ 15. After an echocardiogram revealed abnormal results, Tavares-Tejada received a heart monitor, which allowed him to note symptoms and medical professionals to track them. *Id.* Tavares-Tejada continued to receive medical care since that time, including visits both with medical staff at the Buffalo Federal Detention Facility and an outside cardiologist, and tests on his heart. *Id.* ¶ 16. A doctor reviewed the results of Tavares-Tejada's heart monitor on November 16, 2022. Dkt. 15, at 19; *see also id.* at 268–86.

Dr. Joseph Shin, who Tavares-Tejada's counsel engaged to review medical records and opine on potential health outcomes related to removal from the United States, states that Tavares-Tejada needs rehabilitation services, medication, and intervention for his heart for up to twelve months after surgery. Dkt. 1 ¶ 17; Dkt. 1-2, at 3. Dr. Shin later opined that Tavares-Tejada "should have access to appropriate and timely medical evaluation and care, and uninterrupted access to medications[,] for the duration of his life." Dkt. 18-1, at 2.

Beginning on October 23, 2022, Tavares-Tejada's counsel communicated with officials at the Buffalo Federal Detention Facility to obtain medical records and information about the medical clearance for Tavares-Tejada's projected November removal date. Dkt. 1 ¶¶ 18, 19. In late October, Tavares-Tejada asked the agency

to stay his removal. *Id.* ¶ 20. The agency denied his request on November 4, 2022. *Id.* Tavares-Tejada's scheduled November 8 removal was delayed by COVID-19 quarantine protocol that affected his unit. *Id.* ¶ 21.

In the weeks that followed, Tavares-Tejada's counsel continued communicating with Buffalo Federal Detention Facility staff about his medical records and medical clearance. *Id.* ¶ 22. Counsel received medical records, which did not include a medical clearance or medical treatment plan, as well as a Notice of Imminent Removal, on November 23, 2022. *Id.* ¶ 23. Tavares-Tejada was medically cleared for travel on November 29, 2022. Dkt. 15, at 9.

## II. <u>Procedural History & The Parties' Arguments</u>

Tavares-Tejada filed this petition for a writ of habeas corpus and complaint for injunctive relief on November 28, 2022. Dkt. 1. He alleges the following four claims:

1. A Fifth Amendment substantive due process claim based on ongoing detention without adequate medical care because Respondents-Defendants' "actions toward effectuating . . . removal, in contrast to expert advice that [he] requires specific rehabilitation and time for stable recovery, constitutes an indifferent disregard of [his] health and wellbeing" (Dkt. 1 ¶ 31);

2. A Fifth Amendment substantive due process claim based on removal that violates state-created danger doctrine because Respondents-Defendants' "actions in effectuating . . . removal absent clearance from a cardiologist and a medical release plan that addresses . . . medical issues create a substantial

4

risk of severe harm . . . [because they] directly contrast medical advice that [he] requires continuing care and a period for recovery following his recent operations," in a manner that is "egregious and shocks the conscience" (*id.* ¶ 36);

3. A Fifth Amendment procedural due process claim based on ongoing detention and imminent removal without medical clearance because Respondents-Defendants' "actions toward effectuating . . . removal without ensuring a licensed cardiologist reviews [his] condition and provides clearance for his safe removal to the Dominican Republic, as well as their failure to supply [him] with a detailed medical plan in advance of removal create a substantial risk of an erroneous deprivation of [his] core interest in life and liberty" (*id.* ¶ 39); and

4. An Administrative Procedure Act claim based on ongoing detention without adequate medical care, which constitutes arbitrary agency action and violates the *Accardi* doctrine because Respondents-Defendants must "apply and uphold the rules and regulations contained in the Performance-Based National Detention Standards . . . [and are] restricted from taking any actions that are arbitrary, capricious, an abuse of discretion, or not in accordance with law," and their "failure to abide by the PBNDS . . . constitutes impermissible agency action . . . [and] arbitrary and capricious actions . . . [because] they place [him] at high risk of further decompensation,

worsening heart failure, recurrent arrythmia, repeat heart attacks and possibly death" (*id.* ¶ 44).

Tavares-Tejada asks the Court to issue a writ of habeas corpus ordering Respondents-Defendants to release him from custody immediately, so he can receive required medical treatment. *Id.* at 13. He also seeks an order prohibiting Respondents-Defendants from taking any action to remove him from the United States, including moving him outside of the Western District of New York. *Id.*

Also on November 28, 2022, Tavares-Tejada moved for a temporary restraining order, asking the Court to order Respondents-Defendants to refrain from taking any action to remove him from the United States. *See* Dkt. 3-1, at 2, 13. He states that his pleadings "do[] not challenge the order of removal . . . entered against him or the U.S. Immigration and Customs Enforcement ('ICE')'s authority to remove him." *Id.* at 2. Instead, he "challenges the processes ICE has employed and continues to employ in its effectuation of the removal order." *Id.*

The Court held a status conference on November 29, 2022, at which it asked the parties about the timeline for removal. *See* Dkt. 12. Respondents-Defendants related that Tavares-Tejada was scheduled to fly from the Western District of New York to a staging facility in Louisiana that day, and likely would be removed to the Dominican Republic within ten days. After hearing argument from the parties and considering the report from Dr. Shin (Dkt. 1-2), the Court denied Tavares-Tejada's motion for a temporary restraining order, to the extent it sought to enjoin Respondents-Defendants from transferring Tavares-Tejada from the Western

District of New York to Louisiana. Dkt. 12, at 9; Dkt. 5. The Court then set a briefing schedule on the remainder of the motion for a temporary restraining order—specifically, the request to enjoin Respondents-Defendants from removing Tavares-Tejada from the United States. *See* Dkt 7; Dkt 12.

Tavares-Tejada filed a notice of interlocutory appeal regarding the denial of his request to enjoin Respondents-Defendants from transferring him outside of the Western District of New York on November 29, 2022. Dkt. 8. The Second Circuit issued a temporary stay the same day, and referred the motion to a three-judge motions panel. Dkt. 9. On December 1, 2022, the Second Circuit denied Tavares-Tejada's motion as moot and vacated the stay because Tavares-Tejada "had already been transferred out of the detention facility in Batavia, New York, at the time . . . the temporary stay was issued." Dkt. 16.

Respondents-Defendants opposed Tavares-Tejada's motion on December 2, 2022, arguing that the Court lacks jurisdiction to grant the relief Tavares-Tejada seeks in his motion for a temporary restraining order. Dkt. 17. In particular, they argue that Tavares-Tejada effectively asks to stay their execution of his removal order, over which 8 U.S.C. § 1252(g) strips this Court of jurisdiction. *See id.* And even if the Court had jurisdiction over Tavares-Tejada's request for relief, they argue, Tavares-Tejada cannot meet the standard for a temporary restraining order. *See id.* at 7–12. Respondents-Defendants submitted Tavares-Tejada's medical records in connection with their opposition. Dkt. 15.

Tavares-Tejada replied on December 3, 2022, and attached a supplemental report from Dr. Shin. Dkt. 18; Dkt 18-1. He argues that 8 U.S.C. § 1252(g) does not strip the Court of jurisdiction to issue the temporary restraining order he seeks because his request falls outside of the jurisdiction-stripping provision, which the Supreme Court has construed narrowly, and because the Court maintains habeas jurisdiction to release him from custody. *See* Dkt. 18, at 5–9. In addition, he argues that he established a *prima facie* showing that he is entitled to the relief he seeks. *See id.* at 9–15.

The Court held oral argument on the remainder of Tavares-Tejada's motion for a temporary restraining order on December 5, 2022. For the reasons below, the Court denies the motion for a temporary restraining order because it lacks jurisdiction to grant the relief sought.

## DISCUSSION

This Court first must determine whether it has jurisdiction over the relief Tavares-Tejada requests in his motion for a temporary restraining order. As summarized above, Tavares-Tejada argues that the Court has jurisdiction over his motion because he challenges the manner of his removal, rather than either the removal order itself or Respondents-Defendants' authority to remove him. Respondents-Defendants, on the other hand, argue that 8 U.S.C. § 1252(g) strips this Court of jurisdiction to grant Tavares-Tejada's motion because he seeks an order enjoining them from executing his removal order.

8

By statute:

> [n]otwithstanding any other provision of law (statutory or nonstatutory), including any . . . habeas corpus provision . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or *action by the Attorney General to* commence proceedings, adjudicate cases, or *execute removal orders* against any alien . . . .

8 U.S.C. § 1252(g) (emphasis added). The Supreme Court declined to construe Section 1252(g) in a way that would preclude "judicial review in deportation cases unless this section provides judicial review." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Instead, the Court adopted a "narrower" construction and limited Section 1252(g) to the "three discrete actions that the Attorney General may take" set forth explicitly in the statute: "to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Id.* (quoting 8 U.S.C. § 1252(g)) (emphasis omitted).

Applying Section 1252(g) as construed in *Reno*, the Second Circuit concluded: "[a] petitioner may not bypass the jurisdictional limitation of § 1252(g) to challenge the execution of a removal order 'because it was allegedly made based on unlawful considerations.'" *Troy ex rel. Zhang v. Barr*, 822 F. App'x 38, 39 (2d Cir. 2020) (quoting *Ragbir v. Homan*, 923 F.3d 53, 64 (2d Cir. 2019));[2] *see also Bumu v Barr*, No. 6:20-CV-06742-EAW, 2020 WL 6465433, at *2 (W.D.N.Y. Nov. 3, 2020) (quoting and applying *Troy* to conclude that Section 1252(g) stripped the court of jurisdiction

---

[2] To the extent that "the jurisdictional limit in § 1252(g) may be overcome by 'outrageous' government conduct," Respondents-Defendants' alleged conduct here does not rise to that level. *See Troy*, 822 F. App'x at 39. *See generally* Dkt. 15 (Tavares-Tejada's medical records).

9

to stay removal). In other words, the *Reno* Court's narrow construction of Section 1252(g) does nothing more than limit that provision to its text. *See Vidja v. Whitaker*, No. 19 Civ. 613 (PGG), 2019 WL 1090369, at *4 (S.D.N.Y. Mar. 6, 2019).

The Second Circuit also has held, based on jurisdiction-stripping provisions in Section 1252, that "district court[s] lack[] jurisdiction over . . . indirect challenge[s] to an order of removal," as well as direct challenges. *Delgado v. Quarantillo*, 643 F.3d 52, 53 (2d Cir. 2011); *see also id.* at 55. The question of whether a lawsuit against immigration authorities challenges a removal order "turn[s] on the substance of the relief" sought. *Id.*; *see also Yearwood v. Barr*, 391 F. Supp. 3d 255, 263 (S.D.N.Y. 2019) (applying *Delgado* to a petition that implicated Section 1252(g)).

Analysis of Tavares-Tejada's claims and the temporary restraining order he seeks reveals that he asks the Court to intervene in Respondents-Defendants' "action . . . to . . . execute [his] removal order[]." *See* 8 U.S.C. § 1252(g). Tavares-Tejada raises two Fifth Amendment substantive due process claims—one asserting that ongoing detention without adequate medical care violates his rights, and one asserting that removal without medical clearance violates his rights. He also raises a Fifth Amendment procedural due process and Administrative Procedure Act claim based on his removal without medical clearance and planning. Reports from Dr. Shin opine that "deportation to a location with limited health resources" would increase the risk of adverse outcomes for Tavares-Tejada (Dkt. 1-2, at 3), and that

he "should have access to appropriate and timely medical evaluation and care, and uninterrupted access to medications[,] for the duration of his life" (Dkt. 18-1, at 2).

Although framed as a challenge to the manner in which Respondents-Defendants execute his removal order, the motion for a temporary restraining order ultimately challenges their discretionary actions to deny him a stay of removal,[3] and remove him to the Dominican Republic. Because both challenges arise from Defendants-Respondents' "action . . . to . . . execute [his] removal order[]," Section 1252(g) divests the Court of jurisdiction to grant the relief sought. *See Yearwood*, 391 F. Supp. 3d at 263 (Section 1252(g) barred petitioner's claims because the "ultimate relief" sought—"an order returning him to the United States and preventing the respondents from detaining him or removing him during the pendency of any appeals—[was] a direct challenge to the order of removal, regardless of the fact that [he] frame[d] his claim as a challenge to the process though which he was removed"); *Frederick v. Feeley*, No. 19-CV-6090-FPG, 2019 WL 1959485, at *1, *4 (W.D.N.Y. May 2, 2019) (Section 1252 barred court from deciding petitioner's request to stay his order of removal because "his serious medical issues

---

[3] *See Rranxburgaj v. Wolf*, 825 F. App'x 278, 279, 281 (6th Cir. 2020) (applying *Reno* and concluding that petitioner's challenge to "the agency's denial, on procedural grounds, of his application for a temporary stay of removal" arose from the Attorney General's decision or action to execute a removal order, and was in the realm of Section 1252(g)); *Moussa v. Jenifer*, 389 F.3d 550, 552–54 (6th Cir. 2004) (court lacked jurisdiction to decide petition challenging Attorney General's failure to grant petitioner a stay of deportation, where petitioner alleged that his "life [would] be at risk if he return[ed] to Syria because he [would] be without necessary medical care," because declining to issue a stay of deportation equated to a decision to execute a deportation order).

require[d] costly medicine that [was] unavailable or unaffordable in Trinidad and Tobago").

Section 1252(g) bars the "equitable relief" Tavares-Tejada seeks in his motion for a temporary restraining order "because, if granted, the relief would undo his removal order." *See Yearwood*, 391 F. Supp. 3d at 263.[4]

Tavares-Tejada relies principally on *You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451 (S.D.N.Y. 2018), to argue that Section 1252(g) does not bar the Court from granting him relief because he challenges only the manner of his removal, and Respondents-Defendants may not remove him "in any manner they please." *See id.* at 457; Dkt. 3-1, at 2–3; Dkt. 18, at 7–8. This Court declines to follow that court's analysis, which relied primarily on cases involving decisions related to detention—as well as *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), which also involved a question related to detention. *See You, Xiu Qing*, 321 F. Supp. 3d at 457–58; *see also Asylum Seeker Advoc. Project v. Barr*, 409 F. Supp. 3d 221, 225–26 (S.D.N.Y. 2019) (concluding that *Jennings*'s "reasoning does not preclude the application of [a Section 1252 jurisdiction bar] . . . where Plaintiffs seek to temporarily bar the

---

[4] *Yearwood* involved claims almost identical to Tavares-Tejada's here: "violations of his Fifth Amendment procedural and substantive due process rights . . . and the Administrative Procedure Act" based on the respondents' alleged failure "to provide the petitioner with adequate medical care—specifically, adequate discharge planning." *Id.* at 257, 261. The *Yearwood* petitioner also claimed "to challenge only the manner and method of his removal"—in particular, "the manner in which he was removed violated the respondents' own regulations, the standards set forth om the respondents' Performance Based National Detention Standards, and the petitioner's Due Process rights." *Id.* at 263 & n.7.

12

Government from executing removal orders it has *already* obtained, as such relief arises from the removal orders themselves").

Section 1252(g) forecloses this Court from granting Tavares-Tejada the temporary restraining order he seeks: a stay of removal, which arises from "an action by the Attorney General to . . . execute removal orders." *See* 8 U.S.C. § 1252(g). *Cf. Prado v. Perez*, 451 F. Supp. 3d 306, 312 (S.D.N.Y. 2020) (concluding that Section 1252(g) did not divest the court of jurisdiction over plaintiff's *Bivens* and related claims because it does not cover "claims arising from unlawful arrest or detention"); *Michalski v. Decker*, 279 F. Supp. 3d 487, 495 (S.D.N.Y. 2018) (where petitioner sought "immediate release or an immediate probable cause hearing," concluding that, because the petition challenged "the extent of the Attorney General's authority to detain him as opposed to the Attorney General's exercise of discretion for the three enumerated types of decisions or actions, § 1252(g) [was] inapplicable").

The Court recognizes that Tavares-Tejada's situation is sympathetic on a human level, but under the applicable statute, it lacks the authority to grant him the temporary restraining order he seeks.

## CONCLUSION

For the reasons stated above, the Court DENIES Tavares-Tejada's motion for a temporary restraining order (Dkt. 3) because it lacks jurisdiction to grant the relief he seeks. The parties shall file a status report by December 19, 2022, at which time the Court will decide how to proceed with Tavares-Tejada's petition and complaint.

SO ORDERED.

Dated:  December 5, 2022
        Buffalo, New York

*John L. Sinatra, Jr.*
_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE